UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

CHARLES SCOTT,                          )
                                        )
                PLAINTIFF,              )
                                        )
vs.                                     )     CASE NO. 07-CV-464-FHM
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of the                     )
Social Security Administration,         )
                                        )
                DEFENDANT.              )

## OPINION AND ORDER

Plaintiff, Charles Scott, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1]  In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1]  Plaintiff's March 11, 2005 application for Disability Insurance and Supplemental Security Income benefits was denied initially and upon reconsideration.  A hearing before an Administrative Law Judge (ALJ) was held March 26, 2007.  By decision dated April 23, 2007, the ALJ entered the findings which are the subject of this appeal.  The Appeals Council denied review of the findings of the ALJ on June 11, 2007.  The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003).  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 50 years old at the time of the hearing. [R. 262].  He claims to have been unable to work since November 27, 2004, due to: medication side effects including drowsiness and overheating;  severe pain, stiffness and numbness in his neck radiating down into both arms and hands; pain and stiffness in his lower back radiating down his legs and into his feet; pain and stiffness in both knees; and depression. [R. 89, 270-273].  The ALJ determined that Plaintiff has severe impairments consisting of degenerative joint disease with residuals of multiple knee and ankle surgeries and degenerative disc disease with residuals of cervical and lumbar surgeries. [R. 15].

Despite these impairments, the ALJ found that prior to July 14, 2006, Plaintiff retained the residual functional capacity (RFC) to: lift and/or carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk 2 hours in an 8-hour day; and occasionally stoop, kneel, crouch and crawl. [R.16].   He determined that Plaintiff was capable of performing his past relevant work (PRW) as a collections clerk with this RFC prior to July 14, 2006.

The ALJ concluded that beginning July 14, 2006, Plaintiff had the RFC to lift less than 10 pounds with no prolonged sitting, walking or standing and was significantly compromised by inability to do sustained physical work-related activities in a work setting on a regular and continuing basis. [R. 19].   Based upon the testimony of a

2

vocational expert (VE), the ALJ found that after July 14, 2006, Plaintiff was not able to perform his PRW and that a significant number of other jobs did not exist in the national economy that Plaintiff could perform.  He entered a partially favorable decision, finding Plaintiff was disabled after July 14, 2006, but not before.  Plaintiff requests reversal of the unfavorable portion of the ALJ's decision which was rendered at step four of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ erred in determining he could return to his past work as a collections clerk prior to July 14, 2006, on the following grounds: 1) that the ALJ failed to properly consider the treating physician's opinion; 2) that the ALJ's credibility finding is not supported by substantial evidence; and 3) that the ALJ's assessment of Plaintiff's RFC prior to July 14, 2006 is not supported by substantial evidence.  The Court agrees and finds this case must be reversed and remanded.

### Treating Physician's Records

As reflected in the medical record, Venkatesh Movva, M.D., at the Pain and Sports Center medical center, has been Plaintiff's treating physician since November 26, 2002. [R. 214].  At that time, Dr. Movva reported Plaintiff's pain control was "doing okay with the help of Methadone."[2]  *Id.*  Plaintiff was seen by Dr. Movva seven times

---

[2]  Methadone is in a class of medications called opiate (narcotic) analgesics and is used to relieve moderate to severe pain that has not been relieved by non-narcotic pain relievers. It also is used to prevent withdrawal symptoms in patients who were addicted to opiate drugs. Methadone works to treat pain by changing the way the brain and nervous system respond to pain. *See* drug information
(continued...)

between January 28, 2003 and August 16, 2004. [R. 207-213].  During that treatment

period, various medications were substituted or added, including morphine,[3] in attempts

to control Plaintiff's persistent pain. *Id.*  On August 16, 2004, Plaintiff told Dr. Movva he

had found a job and was doing okay. [R. 206].[4]  On December 10, 2004, Plaintiff

reported his left knee was "killing him" and that his back pain had increased. [R. 204-

250].  Dr. Movva injected Hyalgan[5] and allowed an extra dose of Methadone a day "to

help with the flare up of symptoms." *Id.*  On February 18, 2005, Dr. Movva certified a

handicapped parking placard application for Plaintiff on the basis that Plaintiff was

severely limited in his ability to walk due to an arthritic, neurological or orthopedic

condition. [R. 203].  Dr. Movva wrote on March 21, 2006, that Plaintiff's musculoskeletal

objective findings were unchanged; that he had given him samples of Lunesta for sleep

disturbance and that he "has shown no signs of drug-seeking or drug-abusive behavior

and shown minimal side effects with stability and good functional improvement on

Methadone." [R. 195].  Plaintiff continued to see Dr. Movva through February 2007. [R.

192-203, 246-250].

---

[2] (...continued)
online at: http://www.nlm.hjih.gov/medlineplus/druginfo/meds/a682134.html

[3] Morphine is in a class of medications called opiate (narcotic) analgesics and is used to relieve moderate to severe pain. Morphine long-acting tablets and capsules are only used by patients who are expected to need medication to relieve moderate to severe pain around-the-clock for longer than a few days. It works by changing the way the body senses pain. *See* drug information online at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682133.html

[4] Plaintiff testified he last worked November 27, 2004. [R. 261].

[5] Hyalgan is used to relieve knee pain due to osteoarthritis.  It is used for patients who do not get adequate relief from simple painkillers or from exercise or physical therapy. *See* http://www/hyalgan.com

Dr. Movva signed the first of three Medical Source RFC Opinion forms regarding Plaintiff's physical limitations on February 21, 2005. [R. 248-249].  Dr. Movva indicated Plaintiff could: sit, stand and walk infrequently (0-1 hours); use arms for reaching, pushing and pulling infrequently; and use hands for grasping, handling, fingering or feeling infrequently. [R. 248]. Plaintiff could frequently (4-5 hours) lift/carry 10 pounds. *Id.*  Dr. Movva circled both "pain" and "fatigue" as reasons that Plaintiff needed to rest as indicated in those restrictions and he opined Plaintiff's concentration was impaired due to pain and medication. *Id.*  The doctor found a slight limitation (able to perform the task 75% of the time or more) in Plaintiff's ability: to maintain attention and concentration for extended periods in order to perform simple tasks; to adhere to a schedule and maintain regular attendance; and to work close to others without being distracted. [R. 249].  He indicated a moderate limitation (unable to perform the task 33% of the time) in Plaintiff's ability to maintain attention and concentration for extended periods in order to perform detailed tasks. *Id.*  As support for his findings he cited: "Ongoing leg pain. Stiff neck [and] low back muscles. Markedly [decreased] ROM (range of motion) in all extremities. [Decreased] strength. S/P (status post) lumbar [and] cervical fusion." [R. 249].

The second RFC form signed by Dr. Movva is dated July 14, 2006. [R. 193].  The subcategories for limitations in attention and concentration did not appear on this form. Otherwise, the form was the same form used by Dr. Movva in February 2005. [R. 193, 248-249].  The previously assigned infrequent sitting, reaching, pushing and pulling limitations and 10 pound lifting/carrying limitations remained unchanged. [R. 193]. Plaintiff's capacity for standing and walking, however, was increased to occasionally (2-

3 hours). [R. 193].   Plaintiff's capacity for using his hands for grasping, handling, fingering or feeling was also improved to occasionally. [R. 193, 248].   On this 2006 form, Dr. Movva opined Plaintiff's concentration was impaired by pain but not by medication. *Id.*  Supporting medical findings were: "S/P cervical fusion; S/P lumbar fusion; [deceased] ROM C- [and] L-Spine / Stiffness" [R. 193].

For the third RFC assessment, dated February 16, 2007, the same form was again utilized; with the subcategories for attention and concentration reappearing. [R. 250-251].   Dr. Movva indicated capacities for all activities were "infrequent" and concentration was impaired by medication as well as pain. [R. 250-251].  The capacities indicated on the 2007 form were exactly the same as those indicated on the 2005 form, including attention and concentration abilities. [R. 248-249, 250-251].  Medical findings on this form were listed as: "Severely [decreased] range of motion [due] to lumbar [and] cervical fusion. [decreased] motor strength [with] atrophy of [bilateral] upper [and] lower extremities. [positive] myofascial spasm." [R. 251].

Dr. Movva had also evaluated Plaintiff's Mental RFC on February 21, 2005. [R. 200-202].   In addition to the slight and moderate limitations he had recorded on the physical RFC form, Dr. Movva indicated Plaintiff had a slight limitation in his ability to adhere to a schedule and maintain regular attendance and to perform at a consistent pace without an unreasonable number or length of rest periods. [R. 200-201, 249].  He also assessed a moderate limitation in Plaintiff's ability to handle normal work stress. [R. 200].

**The ALJ's Decision**

The ALJ acknowledged Dr. Movva's three physical RFC assessments and one mental RFC assessment. [R. 17-20].  With regard to Dr. Movva's mental RFC, the ALJ compared his findings to those of a clinical psychologist, Jeri Fritz, Ph.D., who examined and evaluated Plaintiff on June 13, 2005. [R. 15, 18, 175-177].  The ALJ reported Dr. Fritz had found Plaintiff's attention and concentration were within normal limits, such that he would be able to perform simple, repetitive tasks; that Plaintiff's ability to relate to others, including coworkers and supervisors was estimated to be good; and that his ability to handle the stress of day-to-day interactions was judged to be fair. [R. 18].  He observed that Dr. Fritz found Plaintiff did not meet the criteria for depression and that his current GAF was 75. *Id.*   Noting that Dr. Movva is not a psychiatrist, the ALJ stated he could not give Dr. Movva's mental RFC opinion controlling weight. [R. 18].

The ALJ also noted Dr. Movva's February 21, 2005 physical RFC findings. [R. 17].  After summarizing the report of Gary R. Lee, M.D., an agency consultative physician who examined Plaintiff on May 24, 2005, he mentioned Dr. Movva's subsequent report of breakthrough pain and Plaintiff's request for early refill of his pain medication because he was traveling in December 2005. [R. 17-18].  He then summarized Plaintiff's testimony and said:

> I do not discount all of Mr. Scott's complaints.  In view of his multiple surgeries, he would undoubtedly have some pain and limitations in range of motion.

\* \* \*

7

> Mr. Scott repeatedly related ongoing upper extremity pain;
> however, such pain is not supported in the record prior to
> July 14, 2006.  On May 24, 2005, Dr. Lee found no sensory
> loss with deep tendon reflexes 2+, normal muscle tone, and
> upper and lower strength 5/5.  Mr. Scott's gait was normal,
> he had negative straight-leg-raising, and had good fine and
> gross manipulation with his hands.  Although his activities of
> daily living showed continuing pain, Mr. Scott cooked light
> meals, assisted in the kitchen to a limited degree, fed pets,
> drove, shopped, watched television, read and socialized.
> Progress notes by Dr. Movva dated December 15, 2005,
> reflect that Mr. Scott was "traveling" and requested an early
> refill of his medications. Mr. Scott had testified that he had
> gone to Nashville to see a friend, someone he had known in
> the music business.  He said he had stayed two or three
> days.  Mr. Scott testified that he played the guitar and still
> played a little.  He indicated that he last performed about five
> years ago and had performed for compensation.  Mr. Scott
> stated that he did not make any money or royalties off his
> songs.  Dr. Movva stated on March 21, 2006 that Mr. Scott
> showed minimal side effects to his medication with stability
> and good functional improvement.   Given the objective
> medical evidence in the record, I find that Mr. Scott's
> residual functional capacity prior to July 14, 2006, is
> reasonable, and that he could have functioned within those
> limitations without experiencing significant exacerbation of
> his symptoms.  Two medical experts with the State Agency
> also determined that Mr. Scott could perform light work
> activity.

[R. 18-19] (Exhibit citations omitted).

The ALJ reported that on July 14, 2006, Dr. Movva noted Plaintiff had mild motor

weakness in the right upper extremity and that he had restricted Plaintiff to two to three

hours of work in an 8-hour period. [R. 19].  He acknowledged Dr. Movva's findings

regarding Plaintiff's functional limitations. *Id.*  Then, citing Dr. Movva's February 16,

2007 RFC, the ALJ said: "I conclude that as of July 14, 2006, there are objective

findings that support Mr. Scott's allegations of neck, back, knee and arm pain.

Case 4:07-cv-00464-FHM   Document 25 Filed in USDC ND/OK on 12/10/08   Page 9 of 15

Therefore, his residual functional capacity is reduced to performing no more than a limited range of sedentary work activity." [R. 19-20].

## Treating Physician's Opinion

A treating physician may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s) and any physical and mental restrictions. See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Such an opinion is entitled to controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir.2004) (describing "treating physician rule"); *see also* Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *2. An ALJ has an obligation to determine whether a treating physician's opinion is entitled to controlling weight or, if not, whether it is entitled to some lesser weight or none at all. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir.2003). The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* He must also explain how he weighed the opinion of a treating physician against opinions offered by consultative physicians. Generally, the ALJ should give greater weight to the opinions of doctors who have treated the claimant than those who have not. *Id.* at 1300. "The treating physician's opinion is given particular weight because of his 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such

9

as consultative examinations or brief hospitalizations.' " *Doyal,* 331 F.3d at 762 (quoting 20 C.F.R. §§ 416.927(d)(2)).

In the instant case, the ALJ declined to give controlling weight to Dr. Movva's February 21, 2005 mental RFC assessment. [R. 18].   Plaintiff posits that the ALJ effectively rejected the opinion outright. [Dkt. 16, p. 6].   Defendant concedes that the ALJ rejected Dr. Movva's mental assessment but argues his preference of Dr. Fritz's opinion over that of Dr. Movva was proper. [Dkt. 17, p. 3].   Defendant asserts Dr. Movva is not a psychiatrist and that his opinion regarding Plaintiff's mental capabilities exceeded the scope of his expertise.   Defendant also points to Plaintiff's testimony as support for Dr. Fritz's opinion that Plaintiff's depression was situational and had no more than a minimal effect on his ability to perform work-related activities. *Id.*

The ALJ discussed the mental RFC opinion of Dr. Movva, whom he noted was not a psychiatrist. [R. 18].   He explained he had not given Dr. Movva's opinion controlling weight in light of the opinion of Dr. Fritz, a clinical psychologist, that Plaintiff did not meet the criteria for depression. [R. 15].   The Commissioner generally gives more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. § 404.1527(d)(5); 416.927(d)(5); *Davis v. Apfel*, 203 F.3d 834 (Table), 2000 WL 94026 (10th Cir. 2000) (unpublished) (greater weight given to specialist's opinion in area of his specialty).   Based upon his evaluation of the medical evidence the ALJ found Plaintiff's depression was mild and situational and would not have more than a minimal effect on his ability to perform work-related activities. *Id.*   This was essentially a step two finding, at which Plaintiff bears the burden of producing medically determinable evidence of a

severe impairment.  20 C.F.R. §§ 404.1520(c); *Hawkins v. Chater,* 113 F.3d 1162, 1169 (10th Cir. 1997).   Under the circumstances of this case, the Court finds the ALJ permissibly rejected Dr. Movva's opinion regarding Plaintiff's limitations based upon depression in favor of the opinion of Dr. Fritz.

The same can not be said, however, of the ALJ's treatment of Dr. Movva's February 21, 2005 assessment of Plaintiff's physical limitations (2005 opinion).  The ALJ acknowledged the existence of Dr. Movva's 2005 opinion but he did not state how he weighed the opinion. [R. 17]. This is error.  *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)  (citing *Watkins*, 350 F.3d 1300) (remanding where ALJ offered no explanation for the weight, if any, he gave to the opinion of claimant's treating physician).  When the ALJ has failed to weigh relevant medical evidence, the Court cannot assess whether relevant evidence adequately supports the ALJ's findings. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996).

Counsel for the Commissioner suggests the ALJ rejected Dr. Movva's opinion because of what he considered to be conflicting evidence contained in Dr. Lee's report. As Plaintiff correctly points out, however, Dr. Lee did not rate Plaintiff's RFC and his range of motion tests contradicted portions of his narrative report. [R. 168-174].  In his report, Dr. Lee stated Plaintiff had normal range of motion in the thoracic and lumbar spine and he set out specific measured degrees of rotation and flexion. [R. 169]. However, the charts attached to his report reflect restricted degrees of extension, flexion and bending with positive findings of pain and tenderness in the lumbar spine. *Id.*  Thus, Dr. Lee's report  is internally inconsistent.  "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." *Knight v.*

*Chater,* 55 F.3d 309, 314 (7th Cir.1995) (citing 20 C.F.R. § 404.1527(c)); *see also Welch v. Chater*, 98 F.3d 1350, 1996 WL 563856 (10th Cir. 1996) (unpublished) (inconsistency and/or inconclusiveness are proper grounds for discounting treating physician's opinion). Additionally, some of Dr. Lee's findings could be construed as support for Dr. Movva's 2005 opinion.  Dr. Lee reported pain, scarring and limited range of motion of the neck (cervical spine) and he also noted pain, scarring, crepitance and limited range of motion of the knees. *Id.*  The ALJ did not explain how he compared Dr. Lee's report with Dr. Movva's 2005 opinion and he did not resolve the inconsistencies between Dr. Lee's narrative report and his range of motion charts.

The fact that Dr. Movva was Plaintiff's treating physician is undisputed in this case.  The issue here is whether the ALJ properly discounted Dr. Movva's 2005 opinion regarding Plaintiff's limitations.  The ALJ concluded that Plaintiff's multiple surgeries [and impairments] would undoubtedly cause some pain and limitations in range of motion.  In his decision, the ALJ essentially used Plaintiff's travel and guitar playing to debunk Dr. Movva's medical findings regarding Plaintiff's functional limitations.  In doing so, the ALJ engaged in impermissible imposition of his own medical opinion over that of Dr. Movva.  This constitutes reversible error. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (ALJ's credibility judgments by themselves "do not carry the day and override the medical opinion of a treating physician that is supported by the record.").

The ALJ's speculative inferences regarding Plaintiff's activities as reported to the treating physician do not serve as grounds for rejection of a treating physician's opinion. *Id.* (ALJ "may reject a treating physician's opinion outright only on the basis of contradictory

medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."). There is no suggestion by Dr. Movva, or even by Dr. Lee, that because Plaintiff was able to travel or play the guitar, he was able to occasionally[6] stand and/or walk or perform work activities on a sustained basis as the ALJ assessed in his pre-July 14, 2006 RFC for Plaintiff.

The weight accorded Dr. Movver's 2005 opinion is particularly critical because the ALJ apparently relied upon Dr. Movver's July 14. 2006 assessment of physical limitations (2006 opinion) to determine that Plaintiff was disabled as of that date. Yet, that 2006 opinion contained less severe limitations in Plaintiff's ability to stand and walk and to use his hands than had been assessed in the 2005 opinion. The ALJ did not explain how one opinion was entitled to controlling weight but the other was not. When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth specific, legitimate reasons for his decision. *See Watkins v. Barnhart*, 350 F.3d 1297, 2003 WL 22855009, at *2 (10th Cir. Dec. 2, 2003). The ALJ did not do so here.

The ALJ mentioned the opinions of two state agency experts. If he relied upon those opinions to discredit Dr. Movva's 2005 opinion, doing so without a legally sufficient basis was improper. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(1), (2); SSR 96-6p at *2.

---

[6] "Occasionally" has been defined as occurring from very little up to one-third of the of the time, and would generally total no more than about 2 hours of an 8-hour workday. SSR 83-10 (1983 WL 31251) at *5. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. 20 C.F.$. § 404.1567(1), 416.967(a).

Upon remand, the ALJ must reconsider Dr. Movva's 2005 opinion, state the weight it was accorded and explain his rationale for assigning that weight. He must then clarify his findings as to Plaintiff's pre-July 14, 2006 RFC in light of Dr. Movva's 2005 opinion and the other evidence in the record. In doing so, he must consider the totality of the circumstances and articulate his considerations for the record. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir.1996) (the Commissioner must apply the correct legal standards and show that he has done so).

## Credibility Determination

In discussing his credibility findings, the ALJ did not include the explanations Plaintiff gave during his testimony  for his travel and guitar playing. Plaintiff testified he laid down in the back seat of the car while his son drove from Tulsa to Manhattan, Kansas, and that they had stopped several times on the way. [R. 291-292]. He testified he had flown from Tulsa to Nashville, Tennessee, once to visit a friend. [R. 294-295]. He reported he played the guitar in a band until 1994  [R. 298-299], that he performed the last time about five years prior to the hearing [R. 295] and that he still played occasionally for a few minutes at a time [R. 301]. While the ALJ was certainly entitled to consider these activities, there is no indication in the record that Plaintiff engaged in prolonged physical activity on a regular basis such that his ability to perform substantial gainful activity was established. *See Broadbent v. Harris*, 698 F.2d 407 (10th Cir. 1983) (performance of few household tasks, working on cars or taking occasional trip not sufficient evidence to establish ability to engage in substantial gainful activity); *see also Ragland v. Shalala*, 992 F.2d 1056, 1059 (10th Cir. 1993) (same). Further, the significance of the performance of these types of activities is undermined by the

14

deficiency in medical evidence supporting the ALJ's conclusions. *Id.* (Such diversions do not establish, without more evidence, that a person is able to engage in substantial gainful activity).  After reconsideration of the treating physician's 2005 opinion, the ALJ should revisit his credibility findings and determine whether or not Plaintiff's subjective complaints are supported by the medical evidence.

## Conclusion

The parties did not challenge the ALJ's determination that Plaintiff was disabled beginning July 14, 2006.  That portion of the ALJ's decision, therefore, stands.  It is not clear from the record that the ALJ applied the correct legal standards to the issue of Plaintiff's alleged disability prior to that date.  The Court remands that portion of the determination to the Commissioner for reconsideration of the treating physician's 2005 opinion and Plaintiff's RFC prior to July 14, 2006.  This case is REVERSED AND REMANDED as set forth herein.

SO ORDERED this 10th day of December, 2008.


FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

15